**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**JASON M. FARR,**

**Plaintiff,**

**v.** **Case No. 21-cv-469**

**JEREMY BOUSMAN,**

**Defendant.**

---

## ORDER

---

Plaintiff Jason M. Farr, who is representing himself, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Farr was allowed to proceed on a Fourth Amendment excessive force claim against defendant Jeremy Bousman for allegedly punching him in the face and roughly holding his jaw during his arrest. Bousman filed a motion for summary judgment. (ECF No. 35.) The motion is fully briefed and ready for a decision. The parties have consented to magistrate judge jurisdiction. (ECF Nos. 3, 22.) For the reasons stated below, the court grants Bousman's motion for summary judgment.

## PRELIMINARY MATTERS

In his reply brief, Bousman asserts that Farr, in responding to his motion for summary judgment, failed to follow Federal Rule of Civil Procedure 56 or Civil Local Rule 56 because he did not properly dispute Bousman's proposed findings of fact.

(ECF No. 45 at 1.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). In his complaint, Farr invoked 28 U.S.C. § 1746, which is enough to convert the complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). Also, the court has the benefit of three video exhibits, which clearly depict what occurred. As such, the court will consider Farr's submissions and the video where appropriate in deciding Bousman's motion.

## FACTS

Bousman's proposed findings of fact are largely undisputed, and the video evidence (ECF Nos. 39-3 through 39-5) generally corroborates Bousman's version of events. Briefly, on January 22, 2021, around 12:51 p.m., Bousman, who is an officer with the City of Waukesha Police Department, assisted in detaining Farr. (ECF No. 37, ¶ 2.) Non-defendant Officer Darin Wittnebel pulled Farr's car over for lacking license plates. (*Id.*, ¶ 2.) Bousman arrived on the scene, and Wittnebel and Bousman approached Farr's car. (*Id.*, ¶¶ 7, 10.) They smelled marijuana, and in the center console, they observed "two clear, plastic bags containing a green leafy substance." (*Id.*, ¶ 12.) Farr told the officers that the bags contained marijuana, and that the marijuana belonged to him. (*Id.*, ¶ 13.) During the stop, Waukesha County Dispatch informed Bousman that there was an outstanding felony warrant in Milwaukee County for Farr, so Bousman decided to take Farr into custody. (*Id.*, ¶ 14.)

While Bousman and Wittnebel were questioning the other occupants of the car, Farr began to roll up his window. (ECF No. 37, ¶ 15.) When Bousman ordered Farr to keep his window down, he protested and did not comply with the order. (*Id.*, ¶ 16) At that point, Bousman ordered Farr to exit the car and give him the keys. (*Id.*, ¶ 17.) Farr did not comply, so Bousman raised his voice and commanded Farr to exit the car. (*Id.*, ¶ 19.) Bousman also opened Farr's car door, and at that point, Bousman observed Farr reach into his pockets. (*Id.*, ¶¶ 20-23.) Farr also began to "fidget with the center console" and resisted Bousman's orders to stop moving. (*Id.*, ¶¶ 24-28.) Finally, Farr complied with Bousman's directives and exited the car. (*Id.*, ¶ 29.)

Once outside of the car, Farr dropped "his left arm down towards the waistband of his coat pocket." (ECF No. 37, ¶ 31.) At this point, Wittnebel began to draw his gun and ordered Farr to stop moving. (*Id.*, ¶¶ 32-35.) Farr resisted orders to stop moving, so Bousman conducted a body search. (*Id.*, ¶ 36.) Farr fidgeted and moved through the body search. (*Id.*)

After the body search, Bousman placed Farr into the back of his squad car. (ECF No. 37, ¶ 37.) While in the back of the car, as the video shows, Farr was repeatedly yelling that he was being harassed and kicking against the plexiglass partition. (*Id.*, ¶¶ 43-47, ECF No. 39-5 at 27:09-28:10.) Also as the video shows, Farr verbally threatened Bousman, telling him he'd "fuck you up, on the g" and "rob your ass, rape your ass, take your ass, all your cash, everything." (ECF No. 37, ¶ 50: ECF No. 39-5, at 28:10-29:10.) He also told Bousman that he'd "snuff" out his life "at any

moment, bitch." (ECF No. 37, ¶ 58; ECF No. 39-5 at 32:05-32:21.) Farr then said to Bousman, "Fuck you," and spit on him. (ECF No. 37, ¶ 60; ECF No. 39-5, 32:19-32:22.)

In response to being spit on, the video clearly shows that Bousman, using open hands, restrained Farr's head against the plexiglass. (ECF No. 39-5, 32:22-32:25.) Once Farr's head was stabilized, Bousman used his left arm and open right hand to restrain Farr, who was resisting. (*Id.*32:22-32:27.) Bousman then called for a spit mask. (*Id.*, ¶32:27-32:35.) Bousman continued to restrain Farr while waiting for the spit mask. (*Id.*) The whole incident lasted less than one minute by the time a spit mask was placed on Farr's head, and once the spit mask was secured, Bousman released Farr. (ECF No. 37, ¶¶ 67-71.) Bousman states that he only used force to restrain Farr to prevent him from spitting on him again or other officers. (*Id.*, ¶ 65.)

Farr does not dispute that he spit on Bousman. In fact, he fully admits that he spit on him because he was "so angered by the open prejudice of Officer Bousman that all I could do to protest this injustice and save just a shred of dignity that I had to spit directly in the face of Bousman." (ECF No. 44 at 6.) Farr claims that Bousman made racist statements that were not captured on video. (*Id.* at 2.) He speculates that the video was edited to remove these statements, but he offers no proof that the video was altered. (*Id.* at 4.) The video does capture Bousman and Wittnebel questioning the female passenger about Farr, and either Bousman or Wittenbel tells her that they are drug dealers. (*See* ECF No. 39-3.) Farr explains that being called a drug dealer and the other racist actions of Bousman caused him to spit on Bousman. (ECF No. 44 at 6.) Farr also asserts that Bousman punched him in the jaw.(ECF No. 1 at 2.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Farr claims that Bousman used excessive force in violation of his Fourth Amendment rights. The court examines an excessive force claim under the Fourth Amendment's objective reasonableness standard. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id.* The court considers several relevant factors "including the severity of the crime; whether the suspect posed an immediate threat to the officers or others; whether the suspect was resisting or evading arrest; whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties." *Id.* Ultimately, the court should "determine 'whether the force used to seize the suspect was excessive in relation to the danger he posed . . . if left unattended.'" *Id.* (quoting *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011)).

Farr contends that Bousman punched him in the face and used racist language, but the video evidence clearly contradicts this version of events. There is also no evidence that the video was tampered with. "When opposing parties tell two different stories, one of which is blatantly contracted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment," *Scott v. Harris*, 550 U.S. 372, 380 (2007). The video clearly shows that Farr was upset and uncooperative and that Bousman

used an open-palmed restraint technique after Farr spit on him. It also shows that Farr was not in any sort of distress, did not suffer any resulting injury, and that the whole incident lasted less than a minute. Based on the video, no reasonable jury could conclude that Bousman used excessive force against Farr.

## CONCLUSION

For the foregoing reasons, Bousman's motion for summary judgment is granted. Bousman also argued that he was entitled to qualified immunity. Because the court grants summary judgment in his favor on the merits, the court does not need to address the qualified immunity argument. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Bousman's motion for summary judgment (ECF No. 35) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment

under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 19th day of December, 2022.

Stephen C. Dries

STEPHEN DRIES
United States Magistrate Judge